Thomas B. Gaillard, Under-Tutor, *v.* James Foster, Tutor.

The Act of 1855 was intended as a relief to tutors, by allowing the homologation of their accounts, and giving to such a decree certain efficacy. But this Act does not free them from the control which the Probate Court exercises over them by virtue of Art. 350 of C. C. They are bound to render an account whenever they receive orders to that effect from the court, upon the suggestion of the under-tutor or any one else ; or they may, at their option, render an account annually, and have the same homologated contradictorily with the under-tutor.

The court cannot render a judgment against the tutor, in favor of the under-tutor, for any specific amount.

APPEAL from the District Court of the Parish of Madison, *Farrar*, J.
    *Stacy & Snyder*, for plaintiff and appellee.    *T. S. McCay* and *Peter Alexander*, for appellant.

Voorhies, J.    The plaintiff, as tutor of his minor children, was sued by their under-tutor for a rendition of account, or statement of his administration.    The judgment of the District Court being in favor of the latter, the former appealed.

The Civil Code, Art. 350, declares that : " The tutor is bound to give an account of his administration at the expiration of the tutorship, and whenever he is ordered to do so by the Judge."    During the existence of the tutorship, the under-tutor, under the provisions of the Civil Code, had no right to claim, on behalf of the minors, a rendition of account ; although, in an action to remove the tutor, the latter's accounts were open to investigation, for the purpose of proving his mal-administration.    *Monget* v. *Walker*, 4 An. 214; *McGehee* v. *Dupuy*, 7 Rob. 229 ; *Bry* v. *Dowell*, 1 Rob. 111.

The Legislature of 1855, in the Act passed to facilitate the settlement of the accounts of tutors and curators, introduced some changes in this respect.    This statute made it " lawful for tutors and curators of interdicted persons and of absentees, to file annual accounts of their administration and to cause them to be homologated, in due course of law, contradictorily with the under-tutor of the minors, and with a curator *ad hoc* of the interdicted person or absentee."    The Act goes on to determine what effect shall be given to such proceedings : " The judgment homologating the accounts as aforesaid, shall be *prima facie* evidence of the correctness of the account homologated, in any settlement which may afterwards be made with the minor, interdict or absentee."    Session Acts of 1855, p. 40.

This statute gives to the under-tutor the right to stand in judgment, contradictorily with the tutor, when the latter presents yearly accounts of his administration ; and, in the second place, it specially authorizes the homologation of these accounts.    But the defendant contends that it is optional with the tutor to file an account ; and that he cannot be compelled by the court to do so.    This is a forced construction of the law ; for, previous to the passage of this statute, the tutor might be compelled, during his administration, to render an account, although the court could not proceed to homologate it.

The 350th Article of the Civil Code says expressly, that the tutor is bound to give an account of his administration, " whenever he is ordered to do so by the Judge."    This Article is a modification of Articles 469 and 470 of the Napoleon Code.    " Tout tuteur," says Article 469," est comptable de sa gestion lors-

qu'elle finit." The first part of our Article is a litteral translation of the above, and the other part is substituted to the 470th Article of the French Code, which provides :

" Tout tuteur, autre que le père et la mère, peut être tenu, même durant la tutelle, de remettre au subrogé tuteur des états de situation de sa gestion, aux époques que le conseil de famille aurait jugé à propos de fixer, sans néanmoins que le tuteur puisse être astreint à en fournir plus d'un chaque année. Ces états de situation seront rédigés et remis, sans frais, sur papier non timbré, et sans aucune formalité de justice."

Toullier, in commenting on this Article, says :

" Les états de situation ont moins de solemnité ; mais ils suffisent pour mettre le subrogé tuteur en état d'exercer sur la conduite du tuteur, la surveillance dont la loi le charge, et de provoquer sa destitution, s'il aperçoit de l'infidélité ou de l'ineptie." Vol. 2, p. 482, s. 1244.

Our Code, different in this respect from the Napoleon Code, requires the tutor, whenever ordered by the Judge, to give an account of administration ; but is silent as to the manner in which this power is to be exercised by the Judge.

In the case of *Stafford et als.* v. *Villain et als.*, 10 La. 329, the court said :

" Tutors under an order of the Court of Probates, *must, and without it, may* exhibit an account of their administration, and the court may make certain orders thereon, but nothing authorizes it to homologate such accounts, so as to render them conclusive and binding on the minor ; for the law gives to the latter the right, until the expiration of a certain delay after he comes of age, to examine and contest all the accounts of his tutor. The court, therefore, can in no case relieve and discharge the tutor from his responsibility, as has been done in this case."

The Act of 1855, was intended as a relief to tutors in this respect, by allowing the homologation of their accounts, and giving to such a decree certain efficacy. But this Act does not free them from the control which the Probate Court exercised over them, by virtue of Article 350. They are bound to give an account whenever they receive orders to that effect from the court, upon the suggestion of the under-tutor, or any one else ; or they may, at their option, render an account annually, and have the same homologated contradictorily with the under-tutor.

The judgment of the District Court is, however, erroneous. The under-tutor was not entitled to recover a specific amount or sum of money from the tutor ; but the proceedings in the court below should have been strictly to compel the tutor to give an account of his administration, and to have the same homologated.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed ; and that this case be remanded for further proceedings according to law ; the appellee paying the costs of appeal.